# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| G.W. FOODS, INC. HEALTH, WELFARE AND BENEFITS PLAN, and G.W. FOODS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WH ADMINISTRATORS, INC., and COLLIER INSURANCE, <br><br> Defendants. | Case No. 6:17-cv-3380 |

## COMPLAINT

COME NOW Plaintiffs G.W. Foods, Inc. Health, Welfare and Benefits Plan (the "Plan") and G.W. Foods, Inc. ("G.W. Foods") (collectively referred herein as "Plaintiffs"), by and through counsel, and for their Complaint state the following:

## NATURE OF THE CASE

1. This is an action for breach of fiduciary duty pursuant to section 1132 of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq*. ("ERISA"), and for common law breach of contract, breach of fiduciary duty, negligent misrepresentation, negligence, and indemnification. The common law claims arise out of the same common nucleus of operative facts as the federal law claim to which they are joined.

## PARTIES

2. The Plan is an "employee welfare benefit plan" within the meaning of 29 U.S.C. § 1002(1). The Plan is a legal entity that may sue pursuant to 29 U.S.C. § 1132(d).

3. G.W. Foods is a Missouri corporation with its principal place of business at 2041 Railroad Drive, Willow Springs, Missouri 65793. G.W. Foods has twenty-six (26) stores located

in Missouri, Kansas and Arkansas, and many of its employees have been adversely affected by Defendants' conduct. G.W. Foods is the "plan sponsor" of the Plan as defined in 29 U.S.C. §1002(16)(B).

4. Defendant WH Administrators, Inc. ("WHA") is a Texas corporation with its principal place of business at 2 Bethesda Metro Center, Suite 450, Bethesda, Maryland, 20814. WHA holds itself out as a leading provider of labor compliance and benefit solutions for service contractors throughout the United States.

5. Defendant Collier Insurance ("Collier") is a Tennessee corporation with its principal place of business at 606 S. Mendenhall Rd., Suite 200, Memphis, Tennessee, 38117. G.W. Foods retained Collier as a broker, and Collier recommended WHA to service the health care plans paid for by G.W. Foods and its employees.

6. WHA and Collier are collectively referred herein at times as "Defendants".

## JURISDICTION AND VENUE

7. This Court has jurisdiction of Plaintiffs' ERISA claims pursuant to 29 U.S.C. §§ 1132(e)(1) and 28 U.S.C. §§ 1331 and 1337.

8. This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and the controversy is between citizens of different states.

9. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2), and (b)(3).

10. Pursuant to Western District of Missouri Rule 3.2, the Southern Division is appropriate because G.W. Foods is based in Howell County, and no defendant is a resident of Missouri.

## GENERAL ALLEGATIONS

11. On or about March 23, 2010, the Patient Protection and Affordable Care Act, also known as the Affordable Care Act ("ACA"), was signed into law. The ACA generally requires employers like G.W. Foods to provide health care coverage to certain of its full-time employees, and promulgates penalties against employers who do not comply with the ACA's health care coverage mandate.

12. In early April, 2016, G.W. Foods retained Collier as a broker to obtain health care coverage for G.W. Foods and its employees.

13. As G.W. Foods' broker, Collier had a responsibility to represent G.W. Foods' interests, and Collier held itself out that it would represent G.W. Foods' best interests.

14. At all relevant times, G.W. Foods relied on Collier's experience, knowledge, and expertise to assist G.W. Foods to not only comply with the ACA, but to also recommend employee benefits plans that best positioned G.W. Foods and its employees.

15. Shortly thereafter, Collier informed G.W. Foods of WHA, and Collier held WHA out as a sophisticated company that would be able to assist G.W. Foods comply with the ACA.

16. On or about April 7, 2016, WHA sent G.W. Foods a PPACA Compliance Proposal, which was meant to inform G.W. Foods of WHA's services.

17. WHA's Compliance Proposal states:

"We have prepared a carefully designed benefit plan that is designed to put you in a position not only to attract and retain quality employees, but to put you on the road to compliance with regulations contained in the Patient Protection and Affordable Care Act."

18. WHA's PPACA Compliance Proposal also provided G.W.Foods with a PPACA Compliant Medical Plan Detail, which set forth specific medical options for individuals and families under the Plan.

19. WHA's PPACA Compliance Proposal stated categories of costs that include, but are not limited to, coinsurance, out-of-pocket costs, office visits, physical, speech and occupational therapy and other specialists, lab x-ray and nuclear medicine, hospital visits, urgent care, emergency room visits, and prescription drugs.

20. WHA's PPACA Compliance Proposal also informed G.W. Foods of its costs for the eligible employees who participated under WHA's PPACA Compliant Medical Plan options.

21. WHA's PPACA Compliance Proposal did not disclose any additional funding requirements for claim payments or refer in any way to the Plan's funding arrangement as "self-funded."

22. Upon receiving WHA's PPACA Compliance Proposal, G.W. Foods had discussions with Collier, its broker. Collier recommended that G.W. Foods accept the proposal.

23. As part of the proposal evaluation process, G.W. Foods had verbal conversations with Collier and WHA regarding the funding arrangement for the G.W. Foods Plan during which both Collier and WHA represented that G.W. Foods would pay a "fixed" monthly premium to fund health care claims and that a stop loss insurance policy with a specific deductible of $50,000 per claim would be secured to protect G.W. Foods from financial exposure to large claims.

24. Collier and WHA informed G.W Foods that WHA would be responsible for handling, processing, and paying G.W. Foods' benefit plans under the ACA.

25. However, upon information and belief, both Collier and WHA knew that WHA would subcontract with a third-party administrator ("TPA") to process health care claims on behalf of the Plan.

26. On or about April 22, 2016, G.W. Foods and WHA entered into a PPACA Compliance Service Agreement (the "Contract"), wherein WHA agreed to perform services on behalf of G.W. Foods, including, but not limited to:

(a) Establishing and administering a PPACA compliance medical plan design as outlined in WHA's April 7, 2016 PPACA Compliance Proposal;

(b) Providing support and all prototype documents, including applicable trust documents, to establish an ERISA compliant employee benefits trust ("EBT");

(c) Ensuring that funding requirements for the trust are properly set and that appropriate stop loss protection is in place, if needed;

(d) Determining eligibility for benefits through receipt of accurate new hire data and payroll records;

(e) Positively enrolling all full time eligible employees within the required time frame;

(f) Documenting and maintaining electronic records of all required employee notifications;

(g) Maintaining complete enrollment files for declination and enrolled employees of G.W. Foods;

(h) Providing monthly reporting on all plans and participant eligibility and quarterly reporting on financial matters and claims;

(i) Providing employee support, both phone and internet-based, during open enrollment and throughout the plan year;

(j) Providing annual accounting and plan audits as required of all plans participating in the EBT; and

(k) Preparing and providing plan 5500 forms on behalf of G.W. Foods as required by ERISA.

27. The Contract was effective June 1, 2016 through May 31, 2017.

28. Collier and WHA never told G.W. Foods that WHA would utilize a TPA prior to entering into the Contract.

29. Upon information and belief, WHA subcontracted with two TPAs during the relevant Contract period.

30. Pursuant to the Contract, G.W. Foods was to pay a monthly compliance fee to WHA of $30 per eligible employee per month.

31. On or about June 13, 2016, pursuant to the Contract, a Health, Welfare and Benefits Trust (the "Trust") was created "for the benefit of the employees of [G.W. Foods] and its Affiliates covered by the Plan." *See* Health, Welfare and Benefits Trust attached hereto as **EXHIBIT A,** p. 2.

32. The Trust identifies WHA as Plan Administrator.

33. G.W. Foods relied on WHA's PPACA Compliance Proposal and the Contract to create the Plan and Trust, and G.W. Foods informed its employees of health care coverage options under WHA's PPACA Compliant Medical Plan design.

34. As a result of G.W. Foods' reliance, G.W. Foods' employees, who were also beneficiaries under the Plan, enrolled in WHA's PPACA Compliant Medical Plan options.

35. Pursuant to the Contract and verbal discussions with Collier and WHA, and based upon its employees' elections, G.W. Foods was to send the monthly "premiums" for health care coverage to WHA for deposit in the Trust.

36. Moreover, WHA and Collier were paid through G.W. Foods' deposits into the Trust.

37. WHA, and/or the TPAs, were delinquent in processing claims, which included unpaid claims from as early as June 2016, the month the Contract was signed.

38. WHA also failed to provide G.W. Foods with timely information and reports regarding the status of the claims and funding.

39. G.W. Foods repeatedly inquired from Collier as to the status of WHA's failures, and Collier repeatedly deflected G.W. Foods' concerns, often making the concerns seem unimportant or baseless.

40. G.W. Foods paid all premiums through March 2017 in a timely matter but those premiums were not timely deposited in the Trust.

41. Upon information and belief, WHA and/or Collier did not ensure that appropriate stop loss protection was in place.

42. If stop loss protection was not in place, Collier should have represented G.W. Foods' best interests by requiring appropriate stop loss protection.

43. G.W. Foods stopped payment on checks written for both April 2017 and May 2017 premiums and compliance fees because of WHA's delinquent payments and refusal to provide itemized reports of claim payments, reconciliation of Trust deposits, and evidence of stop loss coverage.

44. G.W. offered to place the April and May premium payments in the Trust until WHA provided a reconciliation of paid and outstanding claims and Trust deposits, at which time, G.W. Foods would make the payments to WHA. WHA, however, still was unwilling to make the payments and still have not been made by WHA or its subcontractors.

45. G.W. Foods has spoken with WHA on numerous occasions about WHA's delinquencies in processing the employees' claims.

46. In the summer of 2017, WHA promised G.W. Foods that all claims incurred prior to April 1, 2017 would be processed and paid within thirty (30) days of WHA's promise.

47. WHA stated to G.W. Foods that WHA was working very hard to resolve the issue of delinquent payments.

48. Unfortunately, WHA failed to follow through on their promises of paying the outstanding claims, and making all claims up-to-date.

49. WHA's failures to timely process claims has meant that several of G.W. Foods' employees have received notices from health care providers regarding their medical services and treatment, and a demand from these providers for the employees to pay the outstanding bills.

50. WHA's failures have adversely affected G.W. Foods ability to attract and retain quality employees, as stated by WHA in its April 7, 2016 Compliance proposal.

51. The notices received from the health care providers have caused some of G.W. Foods' employees to seek bankruptcy protection.

52. In addition, G.W. Food employees have expressed deep frustration with their medical bills, which again, has resulted in undesirable interactions between G.W. Foods and its employees.

53. As a result of WHA's failure to process outstanding claims, G.W. Foods was forced to retain a new TPA to process the outstanding claims and was required to pay that TPA $13,800.00.

54. G.W. Foods will be forced to pay in excess of $100,000.00 regarding the current charges that WHA failed to process.

55. As a result of WHA's failure to procure stop loss insurance with a specific deductible of $50,000 per claim, the Plan and G.W. Foods were forced to fund claims above those amounts out of the Plan's assets which depleted the Trust's reserves.

## CLAIMS

### COUNT I – THE PLAN'S CLAIM FOR BREACH OF FIDUCIARY DUTY UNDER ERISA AGAINST WHA

56. The Plan incorporates paragraphs 1-55 as if they were fully restated herein.

57. At all relevant times, WHA acted as the Plan Administrator for the Plan, and rendered services related to the Plan.

58. WHA exercised authority regarding the control, management, operation, and administration of payments required to be made and, therefore, WHA was a fiduciary of the Plan, within the meaning of 29 U.S.C. § 1002(21).

59. The Plan beneficiaries performed all conditions precedent pursuant to WHA's PPACA Compliant Medical Plan options.

60. The Plan beneficiaries are entitled to the benefits under WHA's PPACA Compliant Medical Plan options which have not been paid.

61. In discharging its duties as a fiduciary of the Plan, WHA was required to act in the manner prescribed for fiduciaries under 29 U.S.C. § 1104(a)(1).

62. WHA's conduct failed to comport with the requirements of 29 U.S.C. § 1104(a)(1).

63. WHA has breached its fiduciary duties under ERISA by failing to make or arrange for payments for the beneficiaries' treatments and services and failure to deposit Plan assets in Trust.

64. As a result of WHA's breach, the Plan beneficiaries have suffered and will continue to suffer damages including, but not limited to, additional and unexpected costs of medical treatment, the costs of obtaining an alternative healthcare benefit plan, and other losses.

WHEREFORE, the Plan requests that:

(a) WHA be found to have breached its fiduciary duties under the Plan;

(b) WHA be required to make the Plan beneficiaries whole, and render such other remedial relief as the Court deems appropriate, as required by 29 U.S.C. § 1109(a);

(c) the Court award the Plan its reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1), prejudgment interest, and the costs of this action; and

(d) the Court award such further relief as it deems just and appropriate.

**COUNT II – G.W. FOODS' CLAIM FOR BREACH OF CONTRACT AGAINST WHA**

65. G.W. Foods incorporates paragraphs 1-55 as if they were fully restated herein.

66. The Contract is an enforceable contract between G.W. Foods and WHA.

67. G.W. Foods performed all of its obligations under the Contract, specifically all of its obligations prior to WHA's breach.

68. WHA has failed to perform the services required to be performed under the Contract.

69. WHA has, therefore, materially breached its obligations under the Contract.

70. As a direct and proximate cause of WHA's breach, G.W. Foods has suffered damages including, but not limited to, additional and unexpected costs of medical treatment, the costs of obtaining an alternative healthcare benefit plan, and other losses.

WHEREFORE, G.W. Foods requests that:

(a) WHA be found to have breached the Contract;

(b) WHA be required to make G.W. Foods whole, and render such other remedial relief as the Court deems appropriate;

(c) the Court award G.W. Foods their reasonable attorneys' fees and costs pursuant to Section 22 of the Contract; and

(d) the Court award such further relief as it deems just and appropriate.

**COUNT III – PLAINTIFFS' CLAIM BREACH OF FIDUCIARY DUTY AGAINST DEFENDANTS**

71. Plaintiffs incorporate paragraphs 1-55 as if they were fully restated herein.

72. As a result of the relationship between Plaintiffs and WHA, including, but not limited to, its role in making recommendations with respect to, and facilitating the placement of, health care plans and coverage, WHA had superior knowledge and information regarding health care coverage for G.W. Foods' employees.

73. As a result of the relationship between Plaintiffs and Collier, including, but not limited to, its role as a G.W. Foods' broker, Collier also had superior knowledge and information regarding health care coverage for G.W. Foods' employees.

74. Plaintiffs had no such superior knowledge about health care coverage for G.W. Foods' employees.

75. Plaintiffs relied upon Defendants' knowledge and advice regarding health care coverage.

76. Defendants were aware that Plaintiffs were relying upon Defendants' knowledge and advice regarding health care coverage.

77. In the course of its business, WHA regularly supplies information and advice regarding health care coverage.

78. WHA prides itself as being able to provide, for example, employee support, both phone and internet-based, during open enrollment and throughout the plan year.

79. WHA, therefore, owed Plaintiffs a common-law fiduciary duty to act in good faith and with due regard to the interests of Plaintiffs.

80. WHA knew, or should have known, that Plaintiffs would rely on WHA's knowledge and statements regarding health care coverage, especially regarding payments under WHA's PPACA Compliant Medical Plan options.

81. WHA had a duty to provide to Plaintiffs, for example, monthly reporting on all plans and participant eligibility and quarterly reporting on financial matters and claims.

82. Collier knew, or should have known, that Plaintiffs would rely on Collier's knowledge and statements to protect Plaintiffs by having appropriate health care coverage.

83. Collier had a duty to provide Plaintiffs with appropriate coverage, including, but not limited to, coverage that included stop loss protection.

84. Defendants breached their duties to Plaintiffs.

85. As a direct and proximate cause of Defendants' breaches, G.W. Foods has suffered damages including, but not limited to, additional and unexpected costs of medical treatment, the costs of obtaining an alternative healthcare benefit plan, and other losses.

WHEREFORE, Plaintiffs requests that:

    (a)    Defendants be found to have breached their fiduciary duties;

    (b)    Defendants be required to make Plaintiffs whole, and render such other remedial relief as the Court deems appropriate; and

    (c)    the Court award such further relief as it deems just and appropriate.

## COUNT IV– G.W. FOODS' CLAIM FOR NEGLIGENT MISREPRESENTATION AGAINST DEFENDANTS

86. G.W. Foods incorporates paragraphs 1-55 as if they were fully restated herein.

87. As an alternative and independent complete ground for relief against Defendants with respect to the Plan, G.W. Foods charges Defendants with negligent misrepresentation.

88. WHA owed a duty of care to G.W. Foods to ensure that all claims were paid under the Contract, pursuant to WHA's PPACA Compliant Medical Plan options, and in the course of WHA's business.

89. Collier owed a duty of care to G.W. Foods, as its broker, to ensure that appropriate healthcare coverage was retained.

90. WHA breached its duty of care by negligently making false statements to G.W. Foods regarding its payments to G.W. Foods, which included statements that it would ensure that all outstanding claims were processed and paid.

91. Collier breached its duty of care by negligently making false statements to G.W. Foods regarding WHA and stop loss protection.

92. Defendants had knowledge that G.W. Foods would probably rely on their respective statements, which, if erroneous, would cause G.W. Foods loss or injury.

93. G.W. Foods justifiably relied on Defendants' statements, and in some cases, took action in reliance on WHA's statements.

94. G.W. Foods has suffered monetary damage proximately caused by Defendants' negligence, including, but not limited to, additional and unexpected costs of medical treatment, the costs of obtaining an alternative healthcare benefit plan, and other losses.

WHEREFORE, G.W. Foods requests that:

    (a) Defendants be found to have negligently misrepresented themselves;

(b) Defendants be required to make G.W. Foods whole, and render such other remedial relief as the Court deems appropriate; and

(c) the Court award such further relief as it deems just and appropriate.

## COUNT V – G.W. FOODS' CLAIM FOR NEGLIGENCE AGAINST ALL DEFENDANTS

95. G.W. Foods incorporates paragraphs 1-55 as if they were fully restated herein.

96. As an alternative and independent complete ground for relief, G.W. Foods charges all Defendants with negligence.

97. WHA owed G.W. Foods a duty to perform its services, which included making health care payments.

98. WHA breached its duty to G.W. Foods.

99. Collier, as G.W. Foods' broker, owed G.W. Foods a duty to act in G.W. Foods best interests, by retaining a sophisticated service provider regarding health care services.

100. Collier breached its duty to G.W. Foods.

101. As a result of Defendants' breaches, in whole or in part, collectively or independently, G.W. Foods has been damaged.

102. G.W. Foods' damages are proximately caused by Defendants' breaches, respectively, including, but not limited to, additional and unexpected costs of medical treatment, the costs of obtaining an alternative healthcare benefit plan, and other losses.

WHEREFORE, G.W. Foods requests that:

(a) Defendants be found negligent;

(b) Defendants be required to make G.W. Foods whole, and render such other remedial relief as the Court deems appropriate;

(c) the Court award such further relief as it deems just and appropriate.

## COUNT VI – G.W. FOODS' CLAIM FOR INDEMNIFICATION AGAINST WHA

103. G.W. Foods incorporates paragraphs 1-55 as if they were fully restated herein.

104. The Contract provides, in part, that:

"WHA agrees to indemnify and hold [G.W.] Foods harmless from all claims, liabilities, losses, expenses, fees including attorney fees, costs, and judgments (collectively, "Claims") that may be asserted against [G.W.] Foods that result from the negligent acts or omissions of WHA and/or WHA's employees, agents, or representatives."

105. G.W. Foods, including the Plan participants, have received and continue to receive letters and phone calls from healthcare providers and/or third-party collection agencies demanding payment for claims submitted to, but not processed or paid by, WHA.

106. To the extent G.W. Foods might be held responsible for any claims or demands of any healthcare provides, or from its employees/Plan participants, regarding WHA's negligence, WHA is required to indemnify and hold G.W. Foods harmless.

                Respectfully Submitted,

                SPENCER FANE LLP

                */s/ Jason C. Smith*
                Jason C. Smith, MO #57657
                2144 E. Republic Road, Suite B300
                Springfield, MO 65804
                Telephone: 417.888.1000
                Facsimile: 417.881.8035
                jcsmith@spencerfane.com

                Olawale O. Akinmoladun, MO #63442
                1000 Walnut, Suite 1400
                Kansas City, MO 64106
                Telephone: (816) 474-8100
                Facsimile: (816) 474-3216
                wakinmoladun@spencerfane.com

                ATTORNEYS FOR PLAINTIFFS